United States District Court
District of Massachusetts

```
_____
                              )
ANDREA PEDERSEN, SCOTT MALLGRAF,)
and CLAIRE SCHULTZ, as trustees )
of the Beach Bank Condominium  )
Trust,                         )   Civil No.
        Plaintiffs,            )   10-10922-NMG
                              )
        v.                    )
                              )
HART INSURANCE AGENCY, INC. and )
LAURA J. MURPHY,              )
        Defendants.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Andrea Pedersen ("Pedersen"), Scott Mallgraf ("Mallgraf") and Claire Schultz ("Schultz") (collectively, "plaintiffs") bring suit against Hart Insurance Agency, Inc. ("Hart Insurance") and Laura J. Murphy ("Murphy") (collectively, "defendants") for breach of fiduciary duty (Count I), negligence (Count II), negligent and intentional misrepresentations (Counts III and IV) and unfair and deceptive practices in violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A ("Chapter 93A") (Count V).

I.  **Background**

Plaintiffs are owners of individual units in Beach Bank Condominiums ("Beach Bank"), a seven-building property in

Yarmouth, Massachusetts that was previously known as Bull Run ("Bull Run"), owned by the Bull Run Investment Corporation ("BRIC") and operated as a seasonal hotel. In 2002, BRIC purchased flood insurance for Bull Run from Murphy, an insurance agent employed by Hart Insurance. BRIC provided Murphy with the property's elevation certificates which indicated that three of the buildings were located in the higher-risk, V15 flood zone ("Zone V15") and four of the buildings were located in the lower-risk, A12 flood risk zone ("Zone A12"). In the applications for flood insurance, which were later approved, Murphy designated all seven buildings in Bull Run as located in Zone V15.

The parties dispute why Murphy made the V15 designation and whether it was mistaken. Plaintiffs characterize Murphy's action as a transcription error. Defendants counter that Murphy probably made the V15 designation for all of the Bull Run buildings because if a property is located in more than one flood zone, it is industry practice for an insurance carrier to apply the highest-rated flood zone premium to the entire property. When asked about that practice in her deposition, Murphy testified that "could be" the answer but she ultimately could not remember why she made the designation.

In October, 2003, BRIC converted Beach Bank to individually owned condominium units and notified Murphy, who amended the flood insurance ownership certificate from BRIC to "Beach Bank

Condominium Trust," as requested.  Between 2004 and 2008, Pedersen contacted Murphy on several occasions on behalf of Beach Bank to ask why plaintiffs' flood insurance premiums were so high.[1]  Murphy responded that their premiums were based upon rates set by the federal government and could not be reduced.

In August, 2008, plaintiffs asked Murphy to insure the condominiums individually for flood purposes and to reclassify four of the buildings as in Zone A12.  Before Murphy could accomplish those changes, plaintiffs terminated their relationship with Hart Insurance and purchased insurance through a different agency.

On February 12, 2010, Plaintiffs filed their complaint in the Massachusetts Superior Court for Barnstable County and defendants timely removed to this Court.  In the complaint, plaintiffs allege that Murphy incorrectly labeled four of their units as being located in Zone V15 and failed to consider their eligibility for a Residential Condominium Building Association ("RCBA") policy.  Those actions, plaintiffs contend, constituted a breach of Murphy's general duty of care as an insurance agent and her heightened duty as a fiduciary.  Plaintiffs further assert that Murphy made a material misrepresentation to them that their flood insurance premiums could not be reduced.  In August,

---

[1] While Pedersen estimated that she spoke with Murphy between 20 and 50 times during that period, defendants note that plaintiffs have no evidence that there were that many interactions.

2011, defendants filed a motion for summary judgment which is opposed and pending before the Court.

## II. Legal Analysis

### A. Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party

and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B.     Application**

Defendants move for summary judgment on Counts I through IV on the grounds that they owed the plaintiffs no duty as a matter of law. Defendants submit, in the alternative, that even if they had such a duty, plaintiffs have failed to retain expert witnesses to establish the required standards of care, breach or damages. Defendants move for summary judgment on Counts III through V on the grounds that plaintiffs have failed to carry their evidentiary burden.

**1.     Breach of fiduciary duty**

Whether a defendant owes a fiduciary duty is a question of law and is appropriate for resolution by summary judgment. Brown v. United States, 557 F.3d 1, 3 (1st Cir. 2009).

Under Massachusetts law, an insurance agent owes a duty of due care to the insured with respect to the agency relationship and must exhibit the skill and judgment which can reasonably be expected from similarly situated insurance agents. While Massachusetts courts have not fully delineated the scope of that

duty, treatises and other courts have explained that an agent's duty of skill, care and diligence in the procurement of insurance includes the duty "to exercise good faith and reasonable diligence to procure the insurance on the best terms he can obtain." See, e.g., Zeff Distrib. Co. v. Aetna Cas. & Sur. Co, 389 S.W.2d 789, 795 (Mo. 1965) (quoting Couch on Insurance 2d, § 25:46); First United Bank of Poplarville v. Reid, 612 So.2d 1131, 1137 (Miss. 1992).

Nevertheless, under ordinary circumstances, an insurance agent does not owe a fiduciary duty to advise the insured or "to ensure that the insurance policies procured by him provide coverage that is adequate for the needs of the insured." Wilson v. James L. Cooney Ins. Agency, 845 N.E.2d 1187, 1192-93, 1193 n. 13 (Mass. App. Ct. 2006). Such a heightened duty arises only when "special circumstances of assertion, representation, and reliance are present," such as when the agent has a longstanding relationship with the client, holds herself out as the client's insurance advisor or is paid separately for her advice. AGA Fishing Grp. Ltd. v. Brown & Brown, Inc., 533 F.3d 20, 23-24 (1st Cir. 2008).

Plaintiffs have not made a sufficient showing to raise a jury question as to the existence of such special circumstances in this case. Murphy did not have a longstanding relationship with the plaintiffs. She did not purport to advise them on their

insurance needs nor did she ever receive separate compensation for doing so. She simply applied for, and made changes to, plaintiffs' flood insurance policies when plaintiffs requested. Such circumstances do not give rise to a fiduciary duty. See Wilson, 845 N.E.2d at 1193 n. 13. Accordingly, defendants are entitled to judgment as a matter of law on Count I.

### 2. Negligence

While neither party addressed the matter, the pure economic loss doctrine bars plaintiffs from recovering under their negligence cause of action because they assert no injuries other than "excessive premiums" for flood insurance. FMR Corp. v. Boston Edison Co., 613 N.E.2d 902, 903 (Mass. 1993) ("[P]urely economic losses are unrecoverable in tort actions in the absence of personal injury or property damage."). Accordingly, defendants are entitled to judgment as a matter of law on Count II.

The pure economic loss doctrine does not, however, bar plaintiffs' intentional and negligent misrepresentation claims. Nota Const. Corp. v. Keyes Assocs., Inc., 694 N.E.2d 401, 405 (Mass. App. Ct. 1998) (negligent misrepresentation); First Choice Armor & Equip., Inc. v. Toyobo Am., Inc., 717 F. Supp. 2d (D. Mass. 2010) (intentional misrepresentation). Nor does it bar plaintiffs' Chapter 93A claim. Cummings, 244 F.3d at 26; Sebago, Inc. v. Beazer East, Inc., 18 F. Supp. 2d 70, 103-04 (D. Mass. 1998). The Court, therefore, now examines those claims.

### 3. Intentional misrepresentation

To establish intentional misrepresentation, a plaintiff must show that 1) the defendant made a false statement of a material fact, 2) knowing it to be false, 3) for the purpose of inducing the plaintiff to act on it and 4) the plaintiff justifiably and detrimentally relied on it. Int'l Floor Crafts, Inc. v. Adams, 477 F. Supp. 2d 336, 341 (D. Mass. 2007).

Plaintiffs have failed to allege or proffer any evidence that Murphy knew that plaintiffs' premiums could be lowered in other ways or in any way intended to deceive Pedersen. Their lone factual allegation in that regard is that, under FEMA statutory guidelines, an agent's commission is directly proportional to the policy premium. Yet they do not dispute that Murphy earned no bonuses or commissions for procuring coverage for plaintiffs. Because plaintiffs have failed to raise a triable issue of fact with respect to two elements of their intentional misrepresentation claim, summary judgment is appropriate with respect to Count III.

### 4. Negligent misrepresentation

Under Massachusetts law, a claim for negligent misrepresentation requires a plaintiff to show that 1) the defendant made a false statement of a material fact, 2) the plaintiff justifiably and detrimentally relied on it and 3) the defendant failed to exercise reasonable care in making it.

Cummings v. HPG Intern., Inc., 244 F.3d 16, 24 (1st Cir. 2001). Massachusetts courts treat negligent misrepresentation claims "more like negligence actions than deceit actions, focusing on the degree of care exercised by the speaker in making the statement." Id. at 25. The speaker need not have known that the statement was false if

> the truth [was] reasonably susceptible of actual knowledge, or otherwise expressed, if, through a modicum of diligence, accurate facts [were] available to the speaker.

Zimmerman v. Kent, 575 N.E.2d 70, 74 (Mass. App. Ct. 1991).

In this case, a reasonable jury viewing the evidence in the light most favorable to plaintiffs could find that Murphy made a negligent misrepresentation. With respect to the first element, both parties acknowledge that Murphy represented to Pedersen that plaintiffs' flood insurance premiums could be reduced only by lowering policy limits or changing rates. Implicit in that statement is the assertion that plaintiffs' premiums could not be lowered by changing the listed flood zone designations for some of the buildings. The NFIP manual indicates that rates for Zone V15 are higher than rates for Zone A12. Accordingly, Murphy's representation was incorrect: plaintiffs' premiums could have been reduced without lowering policy limits or changing rates. With respect to the second element, whether Pedersen actually relied on that advice presents a genuine issue of material fact. Finally, a reasonable jury could find that if Murphy had

exercised a modicum of diligence and reviewed the elevation certificates at Pedersen's repeated prompting, she would have realized that her representation was incorrect.

Defendants respond at length that expert testimony is necessary to establish the required standards of care, breach or damages and that, without such testimony, summary judgment is warranted. Had plaintiffs' negligence claim survived summary judgment, this Court would agree. Deciding whether Murphy's alleged mis-designation was negligent would require a jury to determine a number of complex issues, among them: 1) how an insurance agent should designate, on applications for flood insurance, a property with buildings located in different flood zones, 2) whether, if a property is located in more than one flood zone, it is industry practice for an insurance carrier to apply the highest rated zone to the property and 3) what steps, if any, Murphy should have taken upon learning that the property had been converted to condominium ownership.

With the negligence claim dismissed, however, all that is left for the jury to decide is whether, through a modicum of diligence, Murphy could have discovered the underlying reason why plaintiffs' premiums were abnormally high (the flood zone discrepancy) and communicated that information to Pedersen. While expert testimony might be helpful in that regard, the Court finds that inquiry not "so complex that [it would be] beyond the

ordinary understanding of the jury." Allianz Global Risks US Ins. Co. v. J.A. Miara Transp., Inc., No. 08-11901-DPW, 2010 WL 4449583, at *13 (D. Mass. 2010).  For those reasons, expert testimony is unnecessary and summary judgment is unwarranted with respect to Count IV.

### 5. Chapter 93A

To establish a violation of Chapter 93A, plaintiffs must show that the underlying facts fall within "some common-law, statutory or other established concept of unfairness, or rise to the level of immoral, unethical, oppressive or unscrupulous." James L. Minter Ins. Agency v. Ohio Indem. Co., 112 F.3d 1240, 1251 (1st Cir. 1997).  Negligent misrepresentation is sufficient to support a Chapter 93A violation. See Casavant v. Norwegian Cruise Line Ltd., 952 N.E.2d 908, 912 (Mass. 2011).

Because plaintiffs have alleged a prima facie case of negligent misrepresentation, it follows that they have stated a prima facie case for a violation of Chapter 93A. Lechoslaw v. Bank of Am., N.A., 575 F. Supp. 2d 286, 300 (D. Mass. 2008) (explaining that "negligent misrepresentation of a fact the truth of which is reasonably capable of ascertainment is an unfair and deceptive act or practice within the meaning of c. 93A, § 2(a)").

### ORDER

In accordance with the foregoing, defendant's motion for summary judgment (Docket No. 18) is, with respect to Counts I, II

-11-

and III, **ALLOWED**; but is, with respect to Counts IV and V, **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated October 18, 2011